IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

CP #1109, LLC, and
MARTIN E. O'BOYLE,

                Plaintiffs,

v.                                      CIVIL ACTION NO. 5:17-cv-03036

CONTINENTAL MOTORS, INC., and
CONTINENTAL MOTORS SERVICES, INC.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants' Motion to Dismiss for Lack of Personal Jurisdiction* (Document 3) and *Memorandum of Law in Support* (Document 4), the *Memorandum of Law in Support of Plaintiffs' Response to Motion to Dismiss* (Document 11), and the *Defendants' Reply in Support of their Motion to Dismiss for Lack of Personal Jurisdiction* (Document 12). The Court has also reviewed the *Complaint* (Document 1-1) and all attached exhibits. For the reasons stated herein, the Court finds that the Defendants' motion to dismiss should be granted.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

The Plaintiffs, CP #1109, LLC (CP #1109), and Martin E. O'Boyle, initiated this action with a *Complaint* (Document 1-1) filed in the Circuit Court of Raleigh County, West Virginia, on March 23, 2017. The Plaintiffs named Continental Motors, Inc., and Continental Motors

Services, Inc., both Delaware corporations, as Defendants. The Defendants removed the case to this Court via *Notice of Removal* (Document 1) on May 25, 2017, citing diversity jurisdiction.

CP #1109 is the "owner of a certain aircraft with tail number N400EX," an aircraft "frequently stored and serviced at the Raleigh County Memorial Airport." (Compl. at ¶ 4.) Martin O'Boyle is "an owner of the corporate members of CP #1109 and was a passenger on the [a]ircraft several times" during the time period relevant to the action. (*Id.* at ¶ 5.) At some point around November 2010, a mechanic who serviced the aircraft's engine at the Raleigh County Memorial Airport noticed that the aircraft's engine needed repairs. Because the Defendants manufactured the engine and its components, the Plaintiffs contacted the Defendants regarding the engine repairs. The Defendants recommended that their company perform the repairs, and the Plaintiffs entered into an agreement with the Defendants to do so. Shortly thereafter, the Plaintiffs' Raleigh County servicer, Albatross Air, removed and shipped the engine to the Defendants' facility in Long Island, New York. After examining the engine, the Defendants replaced two of the engine's six cylinders and returned the engine to the Raleigh County in March, 2011. Albatross Air then reinstalled the engine in the Plaintiffs' aircraft, and the Plaintiffs proceeded to use it as needed.

At this point, the Plaintiffs began to experience several problems with the engine, including "overheating and a noticeable lack of power creating dangerous conditions in flight which got progressively worse over the next year." (*Id.*) After contacting the Defendants again, the Defendants informed the Plaintiffs that these problems arose because the engine needed to be "broken in." (*Id.* at ¶ 23.) Unbeknownst to the Plaintiffs, however, the Defendants had found that several of the engine cylinders they produced were defective and could cause overheating.

Although the cylinders used to repair the Plaintiffs' aircraft engine were part of this defective batch of cylinders, the Defendants did not contact the Plaintiffs concerning the defects. In early 2013, the aircraft's pilot "had to abort his flight [in the aircraft] shortly after take-off due to extreme overheating of the engine." (*Id.* at ¶ 30.) After this occurrence, the Plaintiffs contacted Continental Motors and were "advised, for the first time, that [the Defendants] had manufactured a 'bad batch' of cylinders and that they were aware of the problem . . . ." (*Id.* at ¶ 31.)

Shortly thereafter, the Defendants inspected the Plaintiffs' engine and found that it had been repaired with the defective cylinders. The parties began discussions on a resolution of the issue, and the Defendants informed the Plaintiffs that they "had the right, in their sole discretion, to make any repairs to the Engine they deemed appropriate pursuant to the terms of the contract" between them. (*Id.* at ¶ 33.) During these discussions, in March 2013, the Defendants transmitted to the Plaintiffs a "false warranty in order to deceive and defraud the Plaintiffs about their legal rights, all to the benefit of [the Defendants]." (*Id.* at ¶ 34.) As of October of 2013, the Defendants had refused to repair or replace the Plaintiffs' aircraft engine or compensate them for losses.

The Plaintiffs allege one count based on a violation of the West Virginia Consumer Credit Protection Act (WVCCPA). They allege that the Defendants engaged in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of West Virginia Code § 46A-6-104." (*Id.* at ¶ 43.) They claim that they relied on these misrepresentations made by the Defendants to their detriment, and that these false statements placed lives in danger.

Carmen Woodham, the Controller of Continental Motors, Inc., submitted an affidavit stating that Continental Motors is a Delaware corporation with its principal place of business in Mobile, Alabama. He states that Continental Motors and its sister company Continental Motors Services are not registered or licensed to do business in West Virginia, have not maintained offices or places of business in West Virginia, own no real estate or any other interests in property in West Virginia, and have not conducted any regular or ongoing advertising, soliciting, marketing, or other sales or service promotions in West Virginia. The Plaintiffs filed a similar lawsuit against the same Defendants in the Superior Court of New Jersey in November 2013. After the Defendants filed a motion for summary judgment in that lawsuit, the Superior Court of New Jersey dismissed each of the Plaintiffs' claims except a breach of contract action and an action under New Jersey law for consumer fraud. (Defs.' Mem. in Supp. at 3.) The Plaintiffs proceeded to file an amended complaint with similar causes of action which proceeded to trial and ended in a jury verdict for the Defendants. (*Id.*)

## STANDARD OF REVIEW

"In order for a court to validly exercise personal jurisdiction over a non-resident defendant: (1) a statute must authorize service of process on the non-resident defendant, and (2) the service of process must comport with the Due Process Clause." *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997). West Virginia's long-arm statute, contained in W. Va. Code § 56-3-33(a), "is coextensive with the full reach of due process," and so the statutory and constitutional queries merge. *Id.*; *HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12-CV-00668, 2015 WL 4772524, at *2 (S.D.W. Va. Aug. 12, 2015) (Chambers, C.J.). "A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant has sufficient

"minimum contacts" with the forum such that requiring the defendant to defend its interests in the forum does not 'offend traditional notions of fair play and substantial justice.'" *Celotex*, 124 F. 3d. at 628 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). When a defendant challenges a court's personal jurisdiction in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), "the burden [is] on the plaintiff to ultimately prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). When no evidentiary hearing is held, "the plaintiff need prove only a prima facie case of personal jurisdiction" and "the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Id.*

A defendant's contacts can establish either specific jurisdiction or general jurisdiction. Specific jurisdiction is available where "the defendant's qualifying contacts with the forum state also constitute the basis for the suit." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 2860, 192 L. Ed. 2d 896 (2015) (internal quotation marks and citations omitted). The Fourth Circuit has established a three-part test to determine whether specific personal jurisdiction is appropriate: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arose out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.* (internal punctuation and citations omitted). General jurisdiction is available only if a corporation's contacts with a state "are so continuous and systematic as to render it essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (citing and quoting from *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (U.S. 2011)).

**DISCUSSION**

Continental Motors and Continental Motors Services both seek dismissal for lack of personal jurisdiction in West Virginia. Because they are both Delaware corporations with principal places of business in Alabama, the events that lead to the litigation took place at a Continental Motor Services plant in Long Island, New York, and they maintain zero connections to West Virginia, the Defendants argue that they do not maintain the systematic and continuous contacts necessary to support general jurisdiction. Further, the Defendants assert that they have not even maintained such minimum contacts to purposefully avail themselves of the privilege of doing business in West Virginia such that the Court has specific jurisdiction over them. The Plaintiffs counter that the Court does maintain jurisdiction over the Defendants. While all but conceding that the requirements for general jurisdiction are lacking, the Plaintiffs contend that the Defendants maintained sufficient minimum contacts with the forum through the acts that led to this litigation such that specific jurisdiction has been established. The Plaintiffs also assert that the minimum contacts arise out of the activities between them and the Defendants, and that it would be reasonable to bring the Defendants into this Court.

The Court finds that the Defendants have not purposefully availed themselves of the privilege of doing business in the forum state to sufficiently justify exerting personal jurisdiction. First, as the Plaintiffs essentially concede, there is no evidence to support the type of systematic and continuous contacts necessary to find general jurisdiction regarding the Defendants. Neither Continental Motors nor Continental Motors Services engage in nor seek to engage in business or business relationships in West Virginia. Neither Defendant maintains a place of business in West Virginia, owns property in West Virginia, or is even registered with the Secretary of State to do

business in West Virginia. Thus, neither of the Defendants' "affiliations with the State are so 'continuous and systematic as to render [them] essentially at home in the forum State,'" and the Court may not exercise general jurisdiction over them. *Bauman*, 134 S. Ct. at 761.

Further, the Plaintiffs have not proven that the Defendants maintained sufficient minimum contacts with the state such that they purposefully availed themselves to the forum for the purposes of specific jurisdiction. The Defendants do not maintain any offices or agents in the state, they own no property in the state, and they maintain no bank accounts in the state. The Defendants did not solicit business in the state, but were contacted by the Plaintiffs to determine what work needed to be completed on the aircraft engine. The Plaintiffs initiated contact with Continental Motors to discuss repairs to the engine, and shipped the engine to New York for repairs at Continental Motors' direction. The Defendants are not engaged in any long-term business in the state, and the engine repair performance at the heart of this litigation did not occur in West Virginia. The Defendants' only contacts with West Virginia, as shown by the Plaintiffs, consists of sending the engine back to the Plaintiffs' mechanic in Raleigh County after it was repaired, and phone contact initiated by the Plaintiffs. Those contacts do not support a finding that the Defendants purposefully availed themselves in a manner that justifies personal jurisdiction.

The Plaintiffs also argue that personal jurisdiction should be found because the Defendants placed the aircraft engine into the stream of commerce with the expectation that it would be purchased by West Virginia consumers. However, the Fourth Circuit has rejected the stream of commerce argument to support minimum contacts sufficient to exert personal jurisdiction. *See ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 1311 S.Ct. 2780, 2785 (2011)(plurality opinion) ("Thus, the Supreme Court has

rejected the exercise of jurisdiction where a defendant has merely placed a product into the stream of commerce foreseeing that it might ultimately reach the forum state."). The Plaintiffs have provided no evidence that the Defendants ever specifically targeted West Virginia for business, and therefore, their stream of commerce argument also fails to satisfy the requirements of personal jurisdiction.

In sum, the Plaintiffs have failed to provide sufficient evidence to support a prima facie case that the Defendants' contacts with the forum state were such that it would not offend the traditional notions of fair play and substantial justice under the Constitution to bring them into West Virginia court.

## CONCLUSION

WHEREFORE, after careful consideration, the Court **ORDERS** that the *Defendants' Motion to Dismiss for Lack of Personal Jurisdiction* (Document 3) be **GRANTED** and that this action be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the docket. The Court further **ORDERS** that all pending motions be **TERMINATED AS MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 13, 2018

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA